**WADE KILPELA SLADE LLP**
Gillian L. Wade, State Bar No. 229124
gwade@waykayslay.com
Sara D. Avila, State Bar No. 263213
sara@waykayslay.com
Marc A. Castaneda, State Bar No. 299001
marc@waykayslay.com
2450 Colorado Ave.
Suite 100E
Santa Monica, CA 90404
Telephone: (310) 667-7273

**LAW OFFICE OF GEORGE FRANJOLA**
George Franjola, Esq. (to be admitted *pro hac vice*)
gfranjola@franjolalaw.com
1740 SE 18th St., Suite 901
Ocala, FL 34471
Telephone: (352) 812-0462

*Attorneys for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL HALQUIST, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, National Association; and DOES 1 – 10, inclusive,<br><br>Defendant. | Case No.: 4:25-cv-04183-YGR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. Violations of the Unfair Competition Law, "Unlawful" Prong, Cal. Bus. & Prof. Code § 17200, *et seq.*<br>2. Violations of the Unfair Competition Law, "Unfair" Prong, Cal. Bus. & Prof. Code § 17200, *et seq.*<br>3. Declaratory and Injunctive Relief, 28 U.S.C. §§ 2201 and 2202 |

Plaintiff Earl Halquist ("Plaintiff"), through undersigned counsel, brings this First Amended Class Action Complaint against Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"), and alleges the following based upon information and belief, except as to allegations pertaining to Plaintiff, which are based upon personal knowledge.

**INTRODUCTION**

1. Plaintiff brings this case on behalf of a proposed class of Wells Fargo customers who opened Wells Fargo EquityLine with Flexibility Accounts, under which they were given access to a revolving line of credit secured by second mortgages on their homes. These loans are commonly known as home equity line of credit loans and will be referred to herein as "HELOC loans" and the mortgages and deeds of trust securing such loans as the "HELOC mortgages." These HELOC loans were extended pursuant to the terms of an agreement titled "EquityLine with FlexAbility$^{SM}$ Agreement" (the "EquityLine Agreement")

2. Because these HELOC loans are secured by second mortgage liens on borrowers' homes, Wells Fargo should have ensured that the liens would terminate *after* the final maturity date for the loans—the date on which the borrowers must repay the outstanding balances in full. If Wells Fargo's security interests in the properties terminated before the borrowers had repaid their debt, the balance of the debts due and owing would be unsecured, exposing Wells Fargo to an increased risk of nonpayment across the entire product line.

3. Nevertheless, Wells Fargo included in thousands of HELOC mortgages earlier maturity dates for the HELOC loans than the maturity date that would be determined at a future point in time using a formula set forth in the EquityLine Agreement. As a result, the liens of the HELOC mortgages would expire prior to the maturity dates of the HELOC loans.

4. Wells Fargo included earlier dates in HELOC mortgages originating from loan offices across the country. Instead of disclosing the discrepancy to their customers, Wells Fargo unilaterally recorded instruments entitled "Notice of Intent to Preserve Interest" ("NIPI") or Affidavits of Correction ("AOC") in the counties where its borrowers resided, purporting to "correct" typographical errors with respect to the maturity dates of the HELOC loans as stated on the HELOC mortgages.

5. In executing and recording the AOCs and NIPIs, Wells Fargo implicitly represented that it had the authority to unilaterally "correct" the maturity dates on the HELOC mortgages when, in fact, it had no contractual or statutory authority to do so rendering the AOCs and NIPIs fraudulent instruments and subjecting Wells Fargo to civil and criminal liability in most states where it recorded them. *See, e.g.,* Cal. Civ. Code § 880.360 (a person "shall not record a notice of intent to preserve interest in real property for the purpose of slandering title to the real property"); Cal. Pen. Code § 115(a) (it is a felony to knowingly procure or offer "any false or forged instrument to be filed, registered, or recorded in any public office within this state . . . ."); *see also Generes v. Justice Court*, 106 Cal.App.3d 678, 681–682 (1980) (the purpose of section 115 is "to prevent the recordation of spurious documents knowingly offered for record"); *People v. Feinberg*, 51 Cal.App.4th 1566, 1579 (1997) ("'The core purpose of … section 115 is to protect the integrity and reliability of public records'").

6. In order to properly correct the discrepancies between borrowers' HELOC mortgages and EquityLine Agreements, Wells Fargo should have notified its borrowers and sought to have them sign any documents Wells Fargo deemed necessary or appropriate in order to properly assure that its HELOC loans continue to be secured by the HELOC mortgages. Because Wells Fargo did not take this step to assure that its debt was properly secured, Wells Fargo is now left with unsecured debt, and its borrowers with clouds on the title of their properties.

7. The unauthorized and fraudulent AOCs and NIPIs create a cloud on the titles to the affected borrowers' properties and are an economic injury. *See Kwikset v. Superior Court*, 51 Cal. 4th 310, 323 (2011) ("There are innumerable ways in which economic injury from unfair competition may be shown," including, among others, by demonstrating that a plaintiff had "*a present or future property interest diminished*."); *see also 65 Butterfield v. Chicago Title Ins. Co.*, 70 Cal. App. 4th 1047, 1060 (1999) ("The possible existence of an easement constitutes a cloud on title which results in immediate damage, even absent formal enforcement of the claim to the easement.").

8. Plaintiff brings this lawsuit on behalf of the following:

    a. A proposed class of borrowers in California who obtained HELOC loans from Wells Fargo who had fraudulent NIPIs or AOCs recorded which purported to

change the terms of their HELOC mortgages (Class A) and asserts on its behalf causes of action for (1) Violations of the "Unlawful" Prong of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. (the "UCL"), and (2) Violations of the "Unfair" Prong of the UCL.

b. A proposed nationwide class of borrowers who obtained HELOC loans from Wells Fargo who had fraudulent NIPIs or AOCs recorded which purported to change the terms of their HELOC mortgages (Class B), asserting a cause of action seeking declaratory and injunctive relief.

## PARTIES

9. Plaintiff Earl Halquist is a citizen of the State of California. Mr. Halquist owns real property located at 12060 Short St., Lakeside, CA 92040-0000. A full legal description of the real property is as follows (the "Property"):

Parcel A:

Parcel 4 of Parcel Map No. 2912, filed in the Office of County Recorder of San Diego County, August 1, 1974 as File No. 74-208053 of Official Records, being a portion of Lots 2, 3, 4, and 5 in Block "C" of Winter Gardens, as per Map Thereof No. 1987.

Parcel B:

An easement and right of way for road purposes over the Northerly 40 feet of the Southerly 140 feet of Lot 2 in Block "C" of Winter Gardens, in the County of San Diego, State of California, according to Map Thereof No. 1987, filed in the Office of the County Recorder of San Diego County, January 18, 1927.

Excepting therefrom that portion lying in Parcel A above.

10. Wells Fargo is a federally chartered bank and is headquartered in Sioux Falls, South Dakota and is a citizen of South Dakota because its articles of association establish that location as its main office. Wells Fargo maintains its corporate offices at 420 Montgomery Street, San Francisco, CA 94104.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant because Defendant purposefully directs its conduct at California, transacts business in California, has substantial contacts with

- 4 -
FIRST AMENDED CLASS ACTION COMPLAINT

California, has engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in California, and purposely availed itself of the laws of California.

12. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because Wells Fargo maintains its corporate offices at 420 Montgomery Street in San Francisco, which is within the Northern District of California. In the Deed of Trust for Plaintiff's HELOC loan, Wells Fargo listed its corporate offices as its address in San Francisco. Venue is also proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because Wells Fargo's decision-making, enforcement policies, and modifications related to the HELOC was formulated and/or executed from its headquarters in San Francisco.

13. Pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), this Court has subject matter jurisdiction over this putative class action because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Wells Fargo. *See* 28 U.S.C. § 1332(d)(2)(A).

## FACTUAL ALLEGATIONS

**A.     Plaintiff's HELOC Loan and HELOC mortgage.**

14. On February 28, 2003, Plaintiff entered into an EquityLine Agreement with Wells Fargo pursuant to which he obtained a $39,400.00 HELOC loan. Plaintiff's loan was structured to provide for a ten-year draw period during which Plaintiff could take cash advances up to his $39,400 credit line. It further provided that, at the end of the draw period, Plaintiff's loan balance would convert to a fully amortizing fixed-rate loan repayable in equal monthly payments for a term of fifteen years if the unpaid balance was less than $20,000 or thirty years if the unpaid balance was more than $20,000 with the maturity date of the loan being the end of the term. Plaintiff's EquityLine Agreement is attached as **Exhibit A**

15. Pursuant to the terms of the EquityLine Agreement, Plaintiff's HELOC loan was secured by a HELOC mortgage which was dated as of February 28, 2003, and which was recorded

on March 27, 2003, in the Official Records of San Diego County Recorder's Office as Instrument Number 2003-0349517. The HELOC mortgage is attached as **Exhibit B**.

16. Also pursuant to the terms of the EquityLine Agreement, Plaintiff agreed to "take any steps, including but not limited to, signing, filing or recording any documents, which are necessary or which [Wells Fargo] deems appropriate, to be sure that my obligations to [Wells Fargo] under the [EquityLine Agreement] become and continue to be secured by the [HELOC mortgage]." In addition, Wells Fargo contracted for the right to unilaterally correct typographical errors or omissions in the HELOC mortgages for a period of 120 days from the loan's closing date Wells Fargo pursuant to a "Correction Agreement Limited Power of Attorney" which it Plaintiff was required to execute.

17. The HELOC mortgage recited that it was a second mortgage subject to a deed of trust securing a note in the amount of $315,000 (the "First mortgage"). The First mortgage was recorded concurrently with the HELOC mortgage in the Official Records of San Diego County Recorder's Office as Instrument Number 2003-0349516. The First mortgage is attached as **Exhibit C**.

18. The HELOC mortgage identified "Wells Fargo Bank, N.A., 420 Montgomery Street, San Francisco, CA 94104" as its "Beneficiary" and required that any notice shall be delivered or mailed to it at that address. It also directed that, upon recording, it was to be returned to "Wells Fargo Services Co., Consumer Loan Servicing Center, P.O. Box 31557, Billings MT 59017-9900."

19. The HELOC mortgage stated in two different provisions that "[t]he maturity date of [the HELOC loan] is 3/20/2013." Thus, because the maturity date is ascertainable from the HELOC mortgage, pursuant to Cal. Civ. Code § government.020, the lien of the mortgage would expire on 3/20/2013, i.e., 10 years after the stated date.

20. Wells Fargo did not unilaterally attempt to correct any typographical errors or omissions in the HELOC mortgages, including the stated maturity date, pursuant to the Correction Agreement Limited Power of Attorney during the 120-day period following the HELOC loan's closing date.

21. On or about November 18, 2004, Plaintiff and Wells Fargo modified the HELOC loan by increasing Plaintiff's credit line to $165,000. In order to be sure that the HELOC loan continued to be secured by the HELOC mortgage, Wells Fargo prepared a "Deed of Trust or Mortgage

Modification" document (the "HELOC modification") which it required Plaintiff to sign and which it recorded on January 12, 2005, in the Official Records of San Diego County Recorder's Office as Instrument Number 2005-0028671. The HELOC modification is attached as **Exhibit D**.

22. The HELOC modification recited that it was between Plaintiff and Wells Fargo Bank N.A., whose office was at 420 Montgomery Street, San Francisco, CA 94104 and it directed that, upon recording, it was to be returned to "Wells Fargo Bank, N.A., P.O. Box 31557, Billings MT 59017."

23. Consistent with the HELOC mortgage, the HELOC modification stated that the maturity date of the HELOC loan was 03/20/2013.

24. At no other time did Wells Fargo request or require that Plaintiff take any steps to be sure that the HELOC loan continued to be secured by the HELOC mortgage.

**B.     Wells Fargo attempts to modify Plaintiff's and the Classes' HELOC mortgages.**

24. Between 2002 and 2005, Wells Fargo extended thousands of HELOC loans to borrowers in over 30 states. And, just as it had done with Plaintiff's HELOC mortgage, Wells Fargo included the date that its borrowers' draw period ended as the maturity date on the thousands of HELOC mortgages that it recorded to secure the HELOC loans.

25. In 2012, Wells Fargo commenced what it called the "Expired Lien Project" after it realized that using the end of the draw period as the maturity date on the HELOC mortgages caused the corresponding HELOC loan to be "30 years short of being secured." Thus, the expressed goal of the Expired Lien project was to "remediate" the 23,000 accounts by "resecuring $1.4B in lines of credit."

25. Wells Fargo initially attempted to remediate and resecure the HELOC loans by unilaterally preparing, executing and recording an instrument it titled an "Affidavit of Correction To Correct a Scrivener's Error" (the "AOCs") which purported to "correct" the Maturity Date on the associated HELOC mortgage. Copies of five such instruments that were recorded in San Francisco County, California, are attached as **Exhibit E**.

26. Although it had no contractual or statutory authority to do so, Wells Fargo executed and recorded thousands of AOCs in most, if not all, of the states where it had recorded HELOC mortgages. Indeed, at the time it recorded the AOCs, Wells Fargo knew that the only legally cognizable method to modify a HELOC mortgage was by having the borrower – and not Wells Fargo – execute a mortgage modification document similar to the HELOC modification that Plaintiff had executed to increase the amount of his HELOC loan.

27. Although Wells Fargo was able to record thousands of AOCs in California, the Recorder's Office of several California counties - including San Diego County - would not allow it to do so likely because the AOCs were not an instrument that was authorized by California law to be recorded. As a result, Wells Fargo resorted to another ploy in its attempt to unilaterally modify the Maturity Date on Plaintiff HELOC mortgage and on other HELOC mortgages recorded in San Diego County. Specifically, on January 2, 2013, Wells Fargo, through its representative Amy M. Long, executed a "Notice of Intent to Preserve Interest" which it recorded as Instrument Number 2013-0011449 in the Official Records of San Diego County Recorder's Office. The NIPI is attached as **Exhibit F**.

28. The NIPI was a fraudulent attempt by Wells Fargo to misuse a provision of the California Marketable Record Title Act ("MRTA") to correct what it termed was an "Error on Mortgage Document" since Wells Fargo knew or should have known that MRTA did not authorize and could not be used for a "Correction of Maturity date to 02/28/2043" on Plaintiff's HELOC mortgage.

29. Plaintiff did not authorize Amy M. Long nor anyone else on behalf of Wells Fargo to prepare and record the NIPI and Wells Fargo never sought Plaintiff's authorization or cooperation in "correcting" Plaintiff's HELOC Mortgage. Rather, because Wells Fargo realized that its unauthorized, unilateral attempt to correct 23,000 security instruments would be questioned by its customers if they were made aware of it, Wells Fargo affirmatively elected to "mitigate customer impact" or, in other words, conceal the fact from Plaintiff and the Class that it had recorded a legally ineffective instrument that affected the borrower's title.

30. The steps taken by Wells Fargo to conceal what it was doing from Plaintiff and members of the Class included by failing to identify Plaintiff and the others as a "grantee" when it recorded the NIPIs and by identifying its documents type as a "Notice" rather than as a "Modification" or "Amendment" of a mortgage. As a result, the NIPI does not appear as an instrument under Plaintiff's or other Class members' name in the various counties' public records grantor-grantee index. Thus, Plaintiff could not have discovered the NIPI despite reasonable diligence, as he had no reason to believe that it existed, and, even if he had reason to believe it existed, he would not have discovered the NIPI the existence of which he only learned about in late-2024.

31. Additionally, when Wells Fargo recorded a "Substitution of Trustee and Full Reconveyance" (the Reconveyance") with respect to Plaintiff's HELOC mortgage in 2020, it failed to state the recorder identification number or book and page of the NIPI on the Reconveyance as required by Cal. Gov. Code § 27361.6. Thus, not only did the Reconveyance not release of cancel the NIPI, it did not put Plaintiff on notice of the NIPI's existence. The Reconveyance is attached as **Exhibit G**.

32. Wells Fargo had a duty to disclose the recording of the Affidavits of Correction NIPI to Plaintiff (and all Class members), as it stands in a fiduciary relationship with its mortgagors, but intentionally failed to disclose, and thus concealed, this material information from Plaintiff and the putative Classes. Plaintiff relied on Wells Fargo's nondisclosure, and had no reason to check the county records regarding the title to his property.

33. Accordingly, Plaintiff's claims are timely under any applicable statutes of limitation pursuant to the discovery rule and the doctrine of fraudulent concealment.

## CLASS ALLEGATIONS

34. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth.

35. Plaintiff brings this action on behalf of himself and all other similarly-situated persons as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

36. Plaintiff seeks to represent two classes composed of and defined as follows (the "Classes"):

Class A: All persons who obtained a HELOC loan with Wells Fargo in the State of California, and for whom Wells Fargo recorded a Notice of Intent to Preserve Interest or an Affidavit of Correction purporting to extend the maturity date of HELOC mortgages recorded in the State of California.

Class B: All persons who obtained a HELOC loan with Wells Fargo in any other state and for whom Wells Fargo recorded a Notice of Intent to Preserve Interest or an Affidavit of Correction purporting to extend the maturity date of a HELOC mortgages securing such HELOC loans.

37. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment to the complaint, or narrowed at class certification.

38. Excluded from the Classes are Defendant, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, counsel for the Plaintiff in this matter, and the Court personnel in this matter.

39. Members of the Classes were uniformly impacted by and exposed to Defendant's misconduct. Accordingly, this Complaint is suitable for class-wide resolution.

40. The Class satisfies the requirements of Rule 23(a), as well as 23(b)(2).

**Federal Rules of Civil Procedure, Rule 23(a) Factors**

41. **Numerosity**. Class A consists of thousands of individuals in the State of California and Class B of thousands more in 30 other states who entered into approximately 23,000 line of credit loans with Wells Fargo. Thus, joinder of Class A members and Class B members is not practicable. The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Further, although not a requirement in the Northern District of California, individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Wells Fargo.

42. **Commonality and Predominance**. There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a). Included within the common questions are.

    a. Whether the AOCs and NIPIs filed by Wells Fargo are effective to amend the terms of the class members' recorded HELOC mortgages;

     b. Whether Wells Fargo was legally authorized to execute and record the AOCs and NIPIs;

     c. Whether corrected HELOC mortgages executed by the class members were required to amend the terms of the class members' mortgages;

     d. Whether the AOCs and NIPIs create a cloud on the title of each property for which one was recorded; and

     e. Whether Plaintiff and the Classes are entitled to declaratory and/or injunctive or other equitable relief.

In addition, the questions of law and fact common to the members of Class A include, but are not limited to:

     a. Whether Defendant's recordation of NIPIs and AOCs to unilaterally extend the maturity date of its security interests in real property violated Cal. Civ. Code § 880.360;

     b. Whether Defendant's recordation of NIPIs and AOCs to unilaterally extend the maturity date of its security interests in real property violated Cal. Pen. Code § 115(a);

     c. Whether Defendant's recordation of NIPIs and AOCs to unilaterally extend the maturity date of its security interests in real property caused Plaintiff and Class A to suffer economic harm; and

     d. Whether Defendant violated Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL").

43. **Typicality**. Plaintiff was a borrower and mortgagors with Wells Fargo at the time of the wrongdoing alleged herein, and Wells Fargo recorded an invalid instrument against his Property in an improper and fraudulent effort to "resecure" of the lien of Plaintiff's HELOC mortgage. Plaintiff's claims are typical of the claims of all Class members, as all Class members are similarly affected by Defendant's wrongful conduct as complained of herein.

44. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is

FIRST AMENDED CLASS ACTION COMPLAINT

a member of the Classes described herein and does not have interests antagonistic to, or in conflict with, the other members of the Classes.

**Federal Rules of Civil Procedure, Rule 23(b)(2) Factors**

45. Defendant has acted on grounds generally applicable to the entire Classes, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendant.

46. Injunctive relief is necessary to prevent further unlawful and unfair business practices by Defendant. Money alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to cloud the titles of Class members' properties.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of Unfair Competition Law (UCL) 'Unlawful' Prong**
*Cal. Bus. & Prof. Code* § 17200, *et seq.*
**On Behalf of Class A**

47. Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

48. Plaintiff brings this claim under the "Unlawful" Prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, on behalf of himself and the Classes.

49. Plaintiff has standing to pursue this claim as he as suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein. As alleged hereinabove, the recordation of the NIPI resulted in a cloud upon Plaintiff's title and constitutes an economic injury. *See Kwikset v. Superior Court*, 51 Cal. 4th 310, 323 (2011); *see also 65 Butterfield v. Chicago Title Ins. Co.*, 70 Cal. App. 4th 1047, 1060 (1999).

50. The "Unlawful" Prong of the UCL "borrows" violations of other federal, state, or local laws and makes them independently actionable under the UCL.

51. In its recordation of the described NIPIs and AOCs, Defendant has violated Cal. Civ. Code § 880.360 (a person "shall not record a notice of intent to preserve interest in real property for

the purpose of slandering title to the real property") and Cal. Pen. Code § 115(a) (it is a felony to knowingly procure or offer "any false or forged instrument to be filed, registered, or recorded in any public office within this state . . . ."). These violations constitute predicate acts that give rise to Plaintiff's claim under the "Unlawful" Prong of the UCL.

52. Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court (1) declaring the NIPIs and AOCs null and void; (2) striking the NIPIs and AOCs from the title of the properties owned by Plaintiff and members of the Class; and (3) enjoining Wells Fargo from unilaterally changing the terms of its mortgages.

**SECOND CAUSE OF ACTION**
**Violations of Unfair Competition Law (UCL) 'Unfair' Prong**
*Cal. Bus. & Prof. Code* **§ 17200,** *et seq.*
**On Behalf of the Class A**

53. Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

54. Individually and on behalf of the proposed Classes, Plaintiff brings this claim under the "unfair" prong of the UCL.

55. Plaintiff has standing to pursue this claim as he as suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein. As alleged hereinabove, the recordation of the NIPI resulted in a cloud upon Plaintiff's title and constitutes an economic injury. *See Kwikset v. Superior Court*, 51 Cal. 4th 310, 323 (2011); *see also 65 Butterfield v. Chicago Title Ins. Co.*, 70 Cal. App. 4th 1047, 1060 (1999).

56. As detailed above, Defendant's unfair conduct includes unilaterally recording NIPIs and AOCs, purporting to "correct" the maturity dates of HELOC loans as stated on the HELOC mortgages. Defendant executed and recorded the NIPIs and AOCs without notifying borrowers, thus clouding the titles to their properties and reducing the properties' value and marketability without borrowers' knowledge.

57. Defendant's business practices, as alleged herein, are unfair for the following reasons:
   a. The injury to the consumer is substantial. Defendant knew it lacked authorization to record the NIPIs and AOCs, and actively concealed the recordation from its

borrowers. In doing so, Defendant clouded the titles of the properties owned by Plaintiff and Class members, reducing the properties' values and marketability without borrowers' knowledge;

b. The injury is not outweighed by any countervailing benefits to consumers or competition; and

c. Plaintiff and Class members could not reasonably have avoided the injury because Defendant concealed the recordation of the NIPIs and AOCs.

58. Defendant's business practices are also unfair because its conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, especially because Defendant was fully aware of the injury resulting from its conduct. The gravity of the harm to borrowers is not outweighed by the utility of Defendant's conduct.

59. Lastly, Defendant's business practices (described above) are unfair because they undermine public policy, which is tethered to specific statutory provisions, including Cal. Civ. Code § 880.360 and Cal. Pen. Code § 115(a).

60. Defendant's conduct was and is uniform, material, and constitutes a continuing course of conduct of unfair competition.

61. Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court (1) declaring the NIPIs and AOCs null and void; (2) striking the NIPIs and AOCs from the title of the properties owned by Plaintiff and members of the Class; and (3) enjoining Wells Fargo from unilaterally changing the terms of its mortgages.

**THIRD CAUSE OF ACTION**
**Declaratory and Injunctive Relief**
*28 U.S.C. §§ 2201 and 2202*
**On Behalf of the Class B**

62. Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

63. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights and other legal relations of an interested parties seeking such declaration whether or not further relief is or could be sought.

- 14 -
FIRST AMENDED CLASS ACTION COMPLAINT

64. An actual and bona-fide controversy exists between the Plaintiff and the Class B members and the Defendant as to the parties' rights and obligations under the AOCs and NIPIs. Specifically, Plaintiffs and all Class members are in doubt as to the following:

 a. Whether the AOCs and NIPIs filed by Wells Fargo are effective to amend the terms of the class members' recorded HELOC mortgages;

 b. Whether Wells Fargo was legally authorized to execute and record the AOCs and NIPIs;

 c. Whether corrected HELOC mortgages executed by the class members were required to amend the terms of the class members' mortgages;

 d. Whether the AOCs and NIPIs create a cloud on the title of each property for which one was recorded; and

 e. Whether a reconveyance of a HELOC mortgage extinguished the AOC or NIPI and rendered it moot.

65. Plaintiff, on behalf of all Class B members, seeks a declaration as to the legal effect, if any, of the AOCs and NIPIs that are the subject of this complaint.

66. The declaration sought with regard to the instant controversy is of a justiciable nature, does not amount to an advisory decree and the adverse legal interests of the parties are of sufficient immediacy and materiality to warrant a declaratory judgment.

67. Plaintiff further seeks an Order under 28 U.S.C. § 2202 requiring Wells Fargo to withdraw each of the fraudulently filed AOCs and NIPIs and enjoining Wells Fargo from filing such instruments in the future.

68. Federal Rule of Civil Procedure 57 permits the Court to determine the existence or nonexistence of any right, duty, power, liability privilege, or of any fact upon which the parties' legal relations depend whether or not another adequate legal remedy exists.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the Classes defined herein, prays for judgment and relief on his Causes of Action as follows:

    A. An Order certifying the proposed Classes and appointing Plaintiff and his Counsel to represent the Classes;

    B. An Order declaring the NIPIs and AOCs at issue in this matter null and void;

    C. An Order removing the NIPIs and AOCs from the titles of the properties owned by Plaintiff and Class members;

    D. An Order enjoining Wells Fargo from unilaterally changing the terms of its mortgages;

    E. Pre-judgment interest from the date of filing this suit;

    F. Reasonable attorneys' fees;

    G. Costs of this suit;

    H. Punitive damages;

    I. Such other and further relief as the Court may deem necessary or appropriate.

Dated: June 5, 2025          **WADE KILPELA SLADE LLP**

By: *[signature: GWade]*
Gillian L. Wade, Esq.
Sara D. Avila, Esq.
Marc A. Castaneda, Esq.

**LAW OFFICE OF GEORGE FRANJOLA**
George Franjola, Esq. (to be admitted *pro hac vice*)
gfranjola@franjolalaw.com
1740 SE 18th St., Suite 901
Ocala, FL 34471
Telephone: (352) 812-0462

*Attorneys for Plaintiff and the Proposed Classes*